### BLACK et al. v. TERRY COUNTY.

### No. 5645.

Court of Civil Appeals of Texas. Amarillo.

Oct. 2, 1944.

Rehearing Denied Oct. 30, 1944.

R. L. Graves, of Brownfield, for appellants.

L. C. Heath, of Brownfield, for appellee.

STOKES, Justice.

This is an action in trespass to try title instituted by the appellants, J. H. Black and others, heirs of J. S. Black, deceased, against Terry County to recover a strip of land out of the north portion of Section 25, Block C–36 in Terry County. The strip of land in controversy is 26 varas wide at the west end, 37 varas wide at the east end, and 1189 varas in length. The County answered by the general issue, alleging further that it did not claim title to the land in fee, but that in September 1924 a public road forty feet in width was established over the tract of land in dispute; that the public has had open and peaceable possession thereof, using and traveling the same since it was established; and that the road had been recognized by the county authorities and maintained by them constantly since September 1924, thereby establishing an easement by prescription.

The case was submitted to a jury upon special issues, in answer to which the jury found that the public had made continuous and uninterrupted use of the road for a period of ten years or more prior to May 8, 1942, with the knowledge, acquiescence, and consent of the appellants. Judgment was entered in favor of the County and, appellants' motion for a new trial being overruled, they duly excepted, gave notice of appeal, and have perfected an appeal to this Court.

Appellants present the case here upon five assignments or points of error, which present two controlling issues. They contend, first, that the judgment is erroneous and should be reversed because there was no definite evidence that the road had

been located on the strip of land in controversy for the length of time required to perfect title or right by prescription; and, secondly, that no limitation or prescription could have matured against them, because they did not have possession of the strip of land in controversy until 1942, when they recovered it in a suit against the heirs of M. B. Sawyer, deceased, who owned the land adjoining Section 25 on the north.

The testimony does not reveal that the authorities of Terry County ever exercised their legal right to condemn any portion of the land in controversy for use as a public road, nor that it was ever donated or dedicated by the owners as such. It is shown, almost without dispute, however, that there has been a road located along the north line of Section 25 and lengthwise over the strip of land in controversy since about 1924, the only evidence to the contrary being that of the appellant, J. H. Black, who admitted that it had been traveled by the public since the erection of the Forrister schoolhouse near the center of the north line of the section, which he thought was in 1928. All of the other witnesses testified, however, that the Forrister schoolhouse was erected in 1924, and the witness, C. A. Duncan, testified that his farm is on the northeast quarter of Section 24, adjoining Section 25 on the west, and that the road along his north line, which extends both east and west from his farm and runs along the north line of Section 25 to the site of the schoolhouse, was worked and "scraped out" in 1923 or 1924 by those in charge of the roads in that section of the county and that it runs in practically the same roadbed now that it has for twenty years. The witness, J. R. Thomas, testified that he began using the road in 1925 and that it was in general use by the public at that time. He said that during all of that time there had been no effort by anyone to close it or prevent its use by the public and that it covers substantially the same ground now that it did when he first began using it. He said further that the citizens of Terry County have been using the road in its present location since 1925 and that all of the traffic in that community passes over it. He said there was no other road running east and west within two miles north and three miles south of this road and that the road is used by all of the citizens in that portion of Terry County. M. C. Chambers testified that the

Forrister schoolhouse was built in 1924 and in that year the citizens of Terry County laid out the road under the supervision of Mack Thompson, who was the road supervisor at that time, and that the road was "opened up, scraped out, and the fences moved back." He said he moved into the community in 1927 and about that time Bill Black, who was then county commissioner, had the road graded for the first time and that it has been used by the public continuously ever since.

The testimony outlined above is practically without dispute and is abundantly sufficient to establish the road as a public highway by prescription. J. S. Black, the father of the appellants, purchased Section 25 from George W. Givens in 1906. Givens acquired it from L. P. Schooler, the original purchaser from the State, and J. S. Black, until his death, and appellants, at all times since, have owned the section and had possession of it.

 The law is well established in this State that whenever the owners of land obtain knowledge of the fact that the county, claiming the right to maintain a road and, acting through its road overseer, takes actual and visible possession of the land over which it runs by working it or preparing it for public travel, thereby asserting a claim to it for the public in such manner that the owners, if present, would have ascertained the fact that the road was being established in behalf of the county and the public generally, the period of limitation or prescription begins to run. The testimony shows that J. S. Black had possession of the entire Section 25 until his death and since his death, J. H. Black has maintained possession for himself and the other appellants constantly and continuously. He admitted in his testimony that there probably was a road or passageway along the north line of Section 25 ever since the Forrister schoolhouse was erected, and stated that he put some of the section in cultivation in 1928. But whether any of the appellants had actual knowledge of the road or not, according to the testimony it was laid out by the citizens of Terry County and worked or "scraped out" in 1924 by the county authorities and graded by them in 1927. Even if the appellant, J. H. Black, who represented the other appellants, did not have actual knowledge of the establishment of the road, he was charged with such knowledge be-

cause he undoubtedly would have known about it if he had been present at the time and would have known of the public travel over it at any time afterwards. These acts of establishing the road and the general travel over it having occurred more than nineteen years before appellants filed this suit or made any effort to discontinue the road, the County and the public acquired title to it by prescription. Phillips v. Texas & P. Ry. Co., Tex.Com.App., 296 S.W. 877; International & G. N. R. Co. v. Cuneo, 47 Tex.Civ.App. 622, 108 S.W. 714; Miller v. Moravietz, Tex.Civ.App., 59 S.W. 2d 242; Cunningham v. San Saba County, 1 Tex.Civ.App. 480, 20 S.W. 941.

Appellants make the further contention in this connection that in order to establish title to a public highway by prescription, it must be shown that the County or the public generally took possession of the land and appropriated it as a public highway under a claim of right and that appellee did not produce any evidence of a claim of right. Possession of land usually carries with it the presumption of claim of title, and such possession accompanied by the exercise of such rights as pertain to it is deemed sufficient evidence of an adverse claim. It is held by our courts that open, hostile, exclusive, and continuous appropriation of land for the prescriptive or limitation period carries with it a more decided conclusion that the appropriation of it was commenced and continued under a claim of right inconsistent with, and hostile to, the claim of another than direct testimony to that effect would be. It has long been the rule in this State that no deed or muniment of title is necessary to constitute a claim of right. The prescriptive or limitation period matures by virtue of the possession of the premises and its appropriation to uses to which it is placed by the possessor which are open, hostile, and adverse to the rights of the record owner. Craig v. Cartwright, 65 Tex. 413; Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Young v. City of Lubbock, Tex.Civ. App., 130 S.W.2d 418; Boy v. McDowell, Tex.Civ.App., 207 S.W. 937.

Appellants make the further contention that the verdict and judgment are without support in the evidence because there was no showing by the appellee that appellants, and those under whom they claim, were not under legal disability during the prescriptive period, and cite the case of West v. City of Houston, Tex.Civ. App., 163 S.W. 679, as authority for their contention. The cited case and some other earlier cases held that the burden rested upon one asserting a right of way over another's land by prescription to establish the negative fact that the owners of the servient estate were free from legal disability during the prescriptive period. But it is now well established that such proof is not necessary. Martin v. Burr, 111 Tex. 57, 228 S.W. 543; Yturria Town & Improvement Co. v. Hidalgo County, Tex. Civ.App., 125 S.W.2d 1092. In the case of Martin v. Burr, supra, Justice Greenwood, speaking for the Supreme Court, said that it was not incumbent on the plaintiffs in error, in order to make out a prima facie cause of action entitling them to a decree adjudging the superiority of their prescriptive right to the use of water from a running stream, to plead or prove that defendants in error, and those under whom they claimed, were free from disabilities at the commencement of, or throughout, the prescriptive period, adopting the New Hampshire rule, which is the opposite from that contended for by the appellants here.

Appellants' second contention is that no limitation or prescription could have matured against them because they did not have possession of the strip of land in controversy until 1942 when they recovered it from the heirs of M. B. Sawyer, deceased. The record shows that on May 8, 1942, in the District Court of Terry County, appellants recovered title and possession of this strip of land from J. W. Cotten and others, heirs of M. B. Sawyer, deceased, which presumably was an action in trespass to try title. Whatever the issues may have been in that case, such possession as Cotten and others might have had could not have matured title in them by limitation because it was neither actual nor exclusive. As we have shown, practically all of the testimony was to the effect that appellee and the public generally had possession of the strip in controversy for almost twenty years. Since nothing was done during all of that time by anyone to interrupt such possession, it must follow that such possession was both actual and exclusive in so far as the easement was concerned. The road and right of way was located upon a portion of Section 25, the record title to which was owned by appellants and their ancestor, and there is no claim that

the Sawyer heirs or their father, M. B. Sawyer, had perfected a title to it by limitation or otherwise, prior to the time it was appropriated as a public road. Evidently they had not done so, because the appellants recovered it from them in a suit instituted by appellants for that purpose. The servient estate of the public easement therefore belonged at all times to the appellants and the exercise of the right-of-way easement prevented the Sawyers, or any other stranger to the title, from having adverse possession of the land covered by it. Federal Crude Oil Co. v. Yountlee Oil Co., 5 Cir., 103 F.2d 171.

Since appellants recovered the title and possession from the heirs of M. B. Sawyer in their suit for that purpose, it must be concluded that appellants were the owners and entitled to possession of it throughout the entire prescriptive period, and if they were, there could be no merit in their contention that they had not had possession of it until 1942 and that, therefore, no limitation or prescription could have matured against them.

Appellants assert in this connection that the strip of land here involved was forfeited to the State in 1938 and that the State issued a patent to them in 1939. They contend that the forfeiture operated to shut off and terminate all rights which appellee or anyone else had in the land prior to that time. The record does not support this contention of appellants. The entire section 25 was awarded to L. P. Schooler in 1902. He conveyed it to George W. Givens and in 1906 Givens conveyed it to J. S. Black, father of the appellants. For some reason not revealed by the record, appellants procured a patent in 1938 to all of the section except the strip in controversy in this case, but in 1939 they procured a patent to this strip and the patent was issued to them upon the original award to L. P. Schooler of September 8, 1902. There is no forfeiture nor a later award shown by the record and, since the patent was issued upon the original award, it must be concluded that the land was not forfeited to the State at any time.

We have carefully examined all of the contentions presented by the appellants and, in our opinion, none of them reveals error. The judgment of the court below will therefore be affirmed.