Hal B. ALLEN et ux., Appellants,

v.

Terry KEELING, Individually and d/b/a A & K Properties, Inc. et al., Appellees.

No. 1523.

Court of Civil Appeals of Texas, Corpus Christi.

April 30, 1980.

Rehearing Denied May 22, 1980.

Kenneth L. Box, Mullins, Box & Parish, Houston, Wayne L. Gardner, Hallettsville, for appellants.

Gus J. Strauss, Jr., Yoakum, for appellees.

## OPINION

YOUNG, Justice.

This is a suit brought by Hal B. Allen, et ux., appellants, seeking an injunction against Terry Keeling, et al., appellees, to prevent them from trespassing on property allegedly owned by the appellants. The property in question is a grassy area located between the fenceline separating the property of the parties and a public roadway which runs on appellants' property parallel to the fenceline. The crux of the appeal is whether the public roadway extends beyond the beaten path to the fenceline designating the boundary between the two parties. One special issue was submitted to the jury which found that the roadway did extend to the fenceline. Judgment was entered for the appellees on this special issue finding. This appeal followed.

A review of the pertinent facts giving rise to this appeal reflects the following. The parties own adjoining tracts of land which are separated by a fenceline. The fenceline was built by the appellants many years ago on the location where a fenceline had previously existed. A public roadway exists on appellants' land running parallel

to this fenceline as one enters appellants' property. The roadway slowly begins to curve away from the fenceline the further one proceeds.

The actual road surface, referred to as the beaten path, has been used by the public for many years as a public roadway. Between the outside edge of the beaten path and the fenceline is a grassy area. The contour of this grassy area appears to be somewhat lower than the beaten path. It is this area which is the focus of this appeal.

Appellees are developing their property on the other side of the fence into small tracts for investors, complete with private roadways. One of these private roadways ends at the fenceline. Appellees, believing that the roadway extended to the fenceline, contracted with the County to build a culvert in the grassy area between the beaten path and the fenceline in order to provide a means of egress and ingress to their property from the established public roadway. It is appellees' contention that they can connect one of the dead-end roads on their property with the public roadway by building an entrance on the grassy area between the beaten path and the fence.

On the other hand, appellants contend that the grassy area belongs to them due to the fact that the public roadway does not extend to the fenceline. Appellants admit that the public has acquired a prescriptive easement to the beaten path, but they assert that the easement does not include the grassy area between the beaten path and the fenceline. They further urge that the fenceline is not the true boundary of the property but rather that the property line is actually 2½ feet on the other side of the fenceline.

Appellants brought this action seeking a permanent injunction to prevent the appellees from connecting their private road with the public roadway. Such construction of this entranceway to the private road would amount to trespass if the land does belong to appellants.

Evidence presented to the jury consisted essentially of testimony of life-long residents of the area and expert testimony from surveyors of the property. Residents of the area testified that they had used the road for many years as a public thoroughfare. Many of the residents also testified that they felt free to drive their cars over to the side of the road if car trouble developed. Many of them also testified they believed that the grassy area between the beaten path and the fenceline belonged to the appellants, that appellants grazed cattle and fertilized and shredded the grasses.

One county official who originally constructed the road testified that he used materials from the grassy area to build the roadbed. He positioned the grader right next to the fenceline when he built the road. In his opinion, the county right-of-way extends to the fenceline and the normal width of county roads is 60 feet from crown to crown.

Surveyors testified for both the appellants and the appellees. From their testimony the actual travelled portion of the roadway, the so-called beaten path, is approximately 18 feet across at the point at which the culvert was constructed. From the fenceline edge of the beaten path to the fenceline itself, it is estimated to be anywhere from 18 feet to 20 feet. The beaten path does not keep a consistent width along its course. This fact causes actual distance to the fenceline to differ at different points.

We note at first that appellants have raised both legal and factual challenges to the sufficiency of the evidence. The long-established rules controlling an appellate review of the evidence on legal and factual insufficiency points will be applied. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951); *City of Corpus Christi v. Krause*, 584 S.W.2d 325 (Tex.Civ. App.—Corpus Christi 1979, no writ); *Robinson Water Co. v. Seay*, 545 S.W.2d 253 (Tex.Civ.App.—Waco 1976, no writ).

The nine points of error brought forward by the appellants pertain to two central

issues. First, did the prescriptive easement of the public extend to the fenceline? Second, should the trial court have considered the appellants' claim that the boundary line between the two parties was not the fenceline but actually extended some distance past the fenceline, thus raising the cause of action of trespass to try title? We will treat each of these separately.

The evidence is uncontroverted that the public has acquired a prescriptive easement to the "beaten path." At the trial the attorney for the appellants even stipulated to the existence of this easement.

What is controverted is whether the prescriptive easement owned by the public extends to the fenceline separating the property owned by appellants and appellees. The question was squarely put before the jury in the special issue submitted by the trial judge:

"Special Issue No. 1

Do you find from a preponderance of the evidence that the width of the roadway in question, at the point where the culvert was installed, does not extend to the existing fence between the lands of Plaintiff and Defendants?

Answer: 'It does not so extend' or 'It does so extend'

Answer: _____

In connection with the above issue, you are instructed that when a road is established, the right is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repairs and the convenience of the traveling public."

The jury answered affirmatively.

■ The "beaten path," as the actual travelled road surface is called here, is only a part of the easement owned by the public for a roadway. The easement includes "sufficient land, where reasonably available, for drainage ditches, repairs, and the convenience of the traveling public." *Robinson Water Co. v. Seay*, supra at 260;

*Nonken v. Bexar County*, 221 S.W.2d 370 (Tex.Civ.App.—Eastland 1949, writ ref'd n. r. e.); *Haby v. Hicks*, 61 S.W.2d 871 (Tex. Civ.App.—San Antonio, 1933, writ dism'd).

■ We hold that a distance of 18 to 20 feet between the road and the fence at the point where the culvert was to be built, is not excessive but rather is necessary for the convenience of the traveling public. This holding does not conflict with other appellate courts which have recognized the width of a public road as wide as 60 feet. *Yturria Town & Improvement Co. v. Hidalgo County*, 125 S.W.2d 1092 (Tex.Civ.App.—San Antonio 1939, no writ). There is conflict in the evidence as to whether the public's right of way in this particular area of the roadway extended to the fenceline. That conflict was resolved by the jury in its answer to Special Issue No. 1.

It is also the contention of the appellants that an issue should have been submitted to the jury involving the true boundary line between the appellants and the appellees. The appellants allege that the fence is not the true boundary of their property but rather there is additional land on the other side of the fence belonging to the appellants. According to the appellants, the attempt to construct a road entrance in that location by the appellees is an improper claim of title to property not belonging to the appellees.

Counsel for the appellants attempted to raise the issue of title to the land next to the fence on several occasions during the trial. The appellant could not definitely state that a narrow strip of land running next to the fence was actually their land, but testimony by a surveyor was attempted to be introduced that seemed to show that the fence was not built on the boundary line. According to the appellants, the true boundary line was 2½ feet further into appellees' land.

On each occasion that testimony was elicited which sought to prove title to this strip, the trial court refused to permit such testi-

mony on the grounds that the evidence was unsupported by the pleadings. The pleadings would have had to include a cause of action for trespass to try title for such issue to be placed before the court. Appellants bring error that the cause of action for determining title to the property was properly before the court.

The purpose of an action of trespass to try title is to recover land unlawfully withheld from the owner and to which he has the right of immediate possession. *Rocha v. Campos*, 574 S.W.2d 233 (Tex.Civ. App.—Corpus Christi 1978, no writ). The burden is on the movant to substantially comply with the Rules of Civil Procedure setting up this cause of action. Rule 783 et seq., T.R.C.P. (1967). An important requisite of these rules is the affirmative establishment of title to the property. *Land v. Turner*, 377 S.W.2d 181 (Tex.Sup.1964); *Trevino v. Munoz*, 583 S.W.2d 840 (Tex.Civ. App.—San Antonio 1979, no writ). The importance of this requisite results from the necessity of proving up the cause of action not on the weakness of the claim to title of the adversary but rather on the strength of the movant's title. *Adams v. Rowles*, 149 Tex. 52, 228 S.W.2d 849 (1950); *Gillum v. Temple*, 546 S.W.2d 361 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n. r. e.).

It is generally accepted that there are four different methods of establishing title: 1) by proof of title emanating from the sovereign of the soil to the plaintiff; 2) by showing a superior title in plaintiff which arises from a common source of title under which the defendant claims; 3) by adverse possession; or 4) by prior possession from a time which antedates the defendant's possession of the land. *Land v. Turner*, supra; *Trevino v. Munoz*, supra; *French v. May*, 484 S.W.2d 420 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). The petition of the appellants does not satisfy the requisites of affirmatively establishing title. No cause of action for trespass to try title is alleged. *Doria v. Suchowolski*, 531

S.W.2d 360 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.). All points of error of appellants have been carefully considered by us and we overruled them.

The judgment of the trial court is affirmed.